Filed 11/25/13  In re Adrianna A. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ADRIANNA A., et al., Persons Coming Under the Juvenile Court Law. | B246113 (Los Angeles County Super. Ct. No. CK94376) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. RENE A., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry Truong, Juvenile Court Referee.  Reversed.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Melinda A. Green, Senior Associate County Counsel, for Plaintiff and Respondent.

_____

In this appeal, a father claims the dependency court's jurisdictional order is not supported by substantial evidence. We agree and therefore reverse.

*FACTUAL AND PROCEDURAL SUMMARY*

In August 2012, the Department of Children and Family Services (Department) received a referral alleging Adrianna A. (age 11), Jacob A. (age 8) and Allison A. (age 1) were at risk of sexual abuse by their father Rene A. The reporting party (Joshua T.) said he was a close friend of Rene and the two exchanged pornography. Joshua said Rene gave him child pornography and also told him about sexually abusing his 11-year-old niece Andrea while she was in his care the week before while his wife and her sister were out shopping. Rene told Joshua he had rubbed his penis against Andrea while they were both clothed, then removed her pants and panties and digitally penetrated her vagina, causing her to urinate. Joshua said Rene had multiple pictures of Andrea, including one in which she was wearing a bikini, and would zoom in on her body parts. Joshua said Rene was not afraid of getting caught because he had been "training" Andrea for two years. According to Joshua, Rene was from El Salvador and a member of the El Salvadoran gang MS13; he said Rene had been deported three times and said he feared retribution but, after talking with his brother about what he had heard and seen, Joshua said he felt he had to come forward and report Rene's conduct to law enforcement.

Joshua provided two thumb drives to the Los Angeles County Sheriff's office. One of the thumb drives Joshua said Rene had given him (telling him not to view it at work) contained minor females participating in sexual acts. Joshua said Rene asked if Joshua knew anyone interested in buying such pornography.

The sheriff's search of Rene's work computer revealed photographs of naked young girls and family photos along with legal adult pornography.

When Rene was interviewed, he denied the allegations and said he was being falsely accused by a co-worker (also his best friend). Rene said his coworkers exchanged pornography at work. One web site he visited had child pornography but he was not

2

interested in it. He denied admitting to law enforcement that he had downloaded child pornography and denied ever watching it but said his coworkers might have sent such content to him.

Adrianna and Jacob denied any abuse and denied seeing any videos of a sexual nature; they said they shared a tablet computer. Adrianna said someone from her father's work had made up stories about him; she denied Andrea was ever alone with Rene.

Rene's wife and the children's mother (Jasmine A.) said she and Rene had been married for several years and she had no concerns about Rene. She denied he had any gang affiliation, distributed child pornography or was ever alone with Andrea.[1]

Special Victims Bureau Detective Barragan reported Rene had admitted to child pornography before such evidence was found. Rene admitted he had downloaded 15-20 videos of child pornography, which he claimed he had downloaded in order to teach his children about pedophiles. After a search of the family home, Rene was arrested (and released on bail the same night). He was charged with two felony counts: (1) possession of child pornography and (2) distribution of child pornography. He admitted he had downloaded videos from an online web site with videos of 11-15 year olds engaging in oral, anal and vaginal intercourse with adult men. He also admitted he had "gay and animal sex porn" as he was also "into those types of porn." He said he had told Jasmine about his possession of child pornography. In Detective Barragan's view, the children were at risk from Rene. She reported Rene had been charged with one count of Penal Code section 311.1 (possession or control of matter depicting sexual conduct of a person under age 18).

In October 2012, the Department filed a petition alleging the children were at substantial risk of sexual abuse because Rene "possessed, downloaded and viewed child

---

[1]    When Andrea was interviewed, she also denied Rene had sexually abused her. Her mother denied knowledge of any sexual abuse as well. However, the detective heard Jasmine and her sister say they "knew this would happen because of [Andrea]" and made comments about her provocative way of dressing. Ultimately, the investigation regarding Andrea resulted in a determination the referral as to her was "unfounded."

pornography, including fifteen to twenty videos of prepubescent girls engaging in sexual acts with adult males, in the children's home, within access of the children."[2] (Welf. & Inst. Code, § 300, subd. (d) [all further undesignated statutory references are to the Welfare and Institutions Code].)

At the October detention hearing, the dependency court ordered the children detained from Rene (to remain with Jasmine), with supervised visits for Rene.

In its jurisdiction and disposition report dated December 3, the Department advised the dependency court Rene had a criminal court date the following week (December 11) in connection with the child pornography charges. According to the social worker, Jasmine said Rene told her not to let the children touch his computer. She said he had told her the child pornography came from a web site called "ARES" which he used to download music; she said he had not intentionally downloaded child pornography and did not distribute any pornography at work.

As stated in the report, Rene said he had told Detective Barragan he downloaded music through a piracy web site called "ARES." When he clicked on a video, others would open. When he clicked on one out of curiosity, he saw that it was a child pornography video. He did not click on any others. He admitted he did watch adult pornography at home on his computer located in the living room but said he never used his computer during the day. Rene said, "I have never seen child pornography. I just saw it that one time that I clicked on the video on ARES. I saw some girls and I was surprised. I'm going to be honest, I forwarded it and I saw some girls naked dancing and then I saw others having oral sex." He said he planned to clean his computer to remove the child pornography; if he had done so, "none of this would be happening."

---

[2] Jasmine was also named in the original petition but allegations relating to her conduct were stricken at the adjudication hearing after her counsel argued there was no evidence she knew or should have known of the content on Rene's computer. Allegations in the original petition relating to subdivision (b) were also stricken, with the corresponding count dismissed.

He denied taking pornography to work or sharing it with his coworkers, but admitted visiting "the website" at work and then "clos[ing] it right away." Later, he said he was not the only person who watched pornography at his workplace and that he had started watching pornography at work seven years earlier. He denied distributing child pornography and denied sexually abusing his niece. He said he had pictures on his computer of children his children would like to see, such as Selena Gomez and "Shake It Up." Regarding his statement to Detective Barragan that he downloaded child pornography videos to teach his children about pedophiles, he said she had misunderstood him. He meant to tell her he wanted to see what pedophiles do to children. Because of the titles, he did know he was accessing child pornography. His children were not allowed to use his computer, he said, because it contained adult pornography.

Adrianna said she had never seen pornography and had never seen her father watching it. Both she and Jacob said Rene only used his computer at night.

Joshua reported that, in the past, Rene had given him "questionable videos" in which the girls appeared young, but one of the thumb drives Rene had recently given him at work definitely contained two videos of child pornography. Joshua said the first was of an older man with a young Hispanic girl who appeared to be 10 or 11 years old. He described the second video as a "white guy" with a "white girl" who appeared to be about 13 years old. Rene urged Joshua to watch what was on the drive and said it was "good stuff." Joshua said he did not want to report Rene, but after showing them to his brother for help, he felt he had to do so.

According to the police report attached to the Department's report, during his interview, Joshua said coworkers routinely exchanged pornography in the warehouse where he and Rene worked. He said Rene frequented sites dedicated to "fringe pornography," including bestiality. Joshua had given law enforcement the same account of Rene's description of sexually abusing Andrea and the child pornography Rene had given him (as already summarized).

5

According to the August 9 supplemental police report also submitted with the Department's report, on the day he was arrested, Rene denied ever being in possession of child pornography. The following day, he asked to meet privately with Detective Barragan. He told her Joshua was his best friend; he (Joshua) had been demoted when he returned to work after a worker's compensation injury. Detective Barragan told Rene the search of his work computer had revealed legal adult pornography, photos of naked young girls, "child erotica" and numerous family photographs, including photographs of Andrea. He said the young girls were female actresses he watched with his children. He eventually admitted he downloaded child pornography on his home computer which he said consisted of 15-20 videos, to watch and warn his children about things children were made to do. Rene said he never viewed child pornography at work. Two days earlier, he said, he had a "feeling" and wanted to delete "all that stuff" so he "cleaned" his computer. He said child pornography would probably still be found on his computer, and he wanted to explain that he had not done anything bad. He said he told Jasmine he viewed child pornography on his home computer the day after he was released from jail. He acknowledged he downloaded pornography of "gay" and "animal" sex. Another detective (Detective Morgan) reviewed Rene's computer and found child pornography.

A second supplemental police report dated August 21 was included with the Department's jurisdiction and disposition report and detailed the child pornography found on Rene's home computer. The hard drive contained 17 child pornography videos saved to a folder labeled "Rene's programs don't use" (translated to English from Spanish).

As described in the second supplemental police report, the videos contained graphic child pornography between young children and adults, including: (1) an 11- or 12-year-old girl orally copulating a male; (2) an adult male having anal sex with a 10- or 11-year-old girl; (3) a 7 or 8 year old orally copulating an adult male and masturbating; (4) an 8- or 9-year-old girl orally copulating an adult male; (5) a 14- to 16-year-old girl having sex with an adult male (one of the videos also given to Joshua); (6) a nude 7- or 8-year-old girl walking along a riverbank with the camera focused on her vagina; (7) a 13-

6

to 14-year-old boy having oral and anal sex with a 15- to 16-year-old girl; (8) a 9- to 10-year-old orally copulating an adult male; (9) an 8- to 9-year-old girl orally copulating and having anal sex with an adult male; (10) a compilation of several child pornography videos depicting an adult male masturbating and ejaculating on a 4- or 5-year-old girl, an 8- or 9-year-old girl being orally copulated by a girl her same age, and an adult male having sex with a 7- to 8-year-old girl; (11) an adult male having anal sex with an 8- or 9-year-old girl; (12) an adult male having sex with a 12- to 13-year-old girl; (13) a nude 7- to 8-year-old girl digitally penetrating herself and orally copulating and having sex with an adult male; (14) a video that begins with the words "Daddy and me at 6" displayed on the screen featuring a 6- to 7-year-old girl having sex with an adult male; (15) an adult make having sexual intercourse with a 7- to 8-year-old girl; (16) a video of two nude 12- to 13-year-old girls kissing each other and a nude 10- to 11-year-old boy touching one girl's vagina; and (17) a 10- to 12-year-old girl orally copulating and having anal sex with an adult male.

At the adjudication and disposition hearing on December 3, Rene (through counsel) asked to proceed by argument given the pending criminal charges against him.[3] Rene's counsel argued the petition should be dismissed because there was no evidence Rene was likely to commit a "hands-on sexual offense against his children;" the children were well cared for; and there was no evidence they used his computer. He said the children had not been sexually abused or sexually exploited and were not at risk of sexual abuse or sexual exploitation within the meaning of section 300, subdivision (d).

The children's counsel noted subdivision (d) of section 300 references Penal Code section 11165.1, subdivision (c)(1), which in turn refers to sexual exploitation as defined by Penal Code section 311.2, a statute describing conduct involving matter depicting a

---

[3]     Rene withdrew his hearsay objection to Joshua's statements in the Department's reports as Joshua was available as a witness, and the Department's reports were admitted into evidence. (When the Department sought to call Joshua to testify, the dependency court sustained Rene's relevance objection.)

minor engaged in obscene acts, and therefore appeared to encompass a person possessing or distributing child pornography. Noting the videos on Rene's computer were child pornography within the meaning of the statute, the children's counsel submitted on the question of whether Rene's conduct fell within the meaning of subdivision (d) of section 300. Moreover, the children's counsel argued, the dependency court could find the children were at risk of inadvertent exposure to pornographic material if they used Rene's computer.[4]

The Department argued child pornography was found on Rene's computer; he admitted to watching it; and he made statements to Detective Barragan indicating he wanted the child pornography videos to teach his children about pedophiles. Noting Jasmine had said she believed Rene had not watched the videos, the Department said both Rene and Jasmine lacked credibility, while Joshua was at court and ready to testify to Rene's statements and conduct. Therefore, the Department told the dependency court, statutory and case law supported the court's exercise of jurisdiction as provided in subdivision (d) of section 300.

After hearing argument, the dependency court found Rene's conduct constituted sexual abuse under Penal Code section 11165.1, subdivision (c)(3): "'Any person who depicts a child in, or who knowingly develops, duplicates, prints, or exchanges, any film, photograph, video tape, negative, or slide in which a child is engaged in an act of obscene sexual conduct, except for those activities by law enforcement . . . .'" "Child pornography is dangerous;" it is "dangerous for the children involved in such pornography." Turning to the question of whether Rene's own children were at risk of sexual abuse, the dependency court observed it was "not a good situation" and found a preponderance of the evidence supported the section 300, subdivision (d) count.

---

[4] Minor's counsel added that the children wanted the court to know they wanted Rene to return home.

The dependency court sustained the petition as amended, ordering the children detained from Rene and placed with Jasmine.[5] In addition, the court ordered Rene to participate in individual counseling to address case issues including risks associated with child pornography. Rene's visits were to be monitored, with the Department given discretion to liberalize the visits, and Jasmine could monitor visits in the children's home.

Rene appeals.[6]

### DISCUSSION

Rene argues the dependency court's jurisdictional findings were not supported by substantial evidence. He says his actions "likely support criminal conduct within the meaning of the Penal Code," but says his "possession of child pornography, standing alone, did not place his children at risk for sexual abuse pursuant to section 300, subdivision (d)." Because the Department did not show Rene had sexually abused or

---

[5] The dependency court amended the language of the petition to strike references to Rene's conduct relating to his niece Andrea in connection with the section 300, subdivision (d) count; struck Jasmine from the subdivision (d) count; and dismissed the subdivision (b) count.

The sustained amended subdivision (d) count read: "The children['s] father Rene A[.] created a detrimental and endangering home environment for the children in that [he] possessed, downloaded and viewed child pornography, including fifteen to twenty videos of prepubescent girls engaging in sexual acts with adult males, in the children's home, within access of the children. Such a detrimental and endangering home environment established for the children by the[ir] father places the children at risk of harm."

[6] We requested and obtained the subsequent minute orders in this case. On June 4, 2013, the dependency court received the Department's report filed for that date, and the matter was continued for a contested judicial review hearing (§ 364), with the December 3, 2012, adjudication and disposition order in place. Then, according to the minute order of June 26, the matter was on calendar for a contested hearing on a "home of mother order," and after Jasmine submitted on the recommendation for such services, the dependency court ordered continued family maintenance services for her. The next hearing is scheduled for December 18, 2013, for further judicial review. (There is no further mention of Rene's December 2012 criminal court hearing date in the minute orders or the parties' briefs.)

exploited his children or that there was a substantial risk that he will sexually abuse or exploit any of them, as defined in section 11165.1 of the Penal Code, we agree.

In reviewing the dependency court's jurisdictional findings for substantial evidence (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193), an appellate court does not reweigh the evidence or express an independent judgment on the evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

Pursuant to subdivision (d) of section 300, any child who comes within the following description is within the jurisdiction of the dependency court and may be adjudged a dependent child: "The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

As defined in Penal Code section 11165.1, "sexual abuse" includes both "sexual assault" and "sexual exploitation." Pursuant to subdivision (a) of Penal Code section 11165.1, "sexual assault" is "conduct in violation of one or more of the following sections: Section 261 (rape), subdivision (d) of Section 261.5 (statutory rape), 264.1 (rape in concert), 285 (incest), 286 (sodomy), subdivision (a) or (b), or paragraph (1) of subdivision (c) of Section 288 (lewd or lascivious acts upon a child), 288a (oral copulation), 289 (sexual penetration), or 647.6 (child molestation)."

Subdivision (c) of section 11165.1 provides as follows: "'Sexual exploitation' refers to any of the following:

"(1) Conduct involving matter depicting a minor engaged in obscene acts in violation of Section 311.2 (preparing, selling, or distributing obscene matter) or subdivision (a) of Section 311.4 (employment of minor to perform obscene acts).

"(2) Any person who knowingly promotes, aids, or assists, employs, uses, persuades, induces, or coerces a child, or any person responsible for a child's welfare,

who knowingly permits or encourages a child to engage in, or assist others to engage in, prostitution or a live performance involving obscene sexual conduct, or to either pose or model alone or with others for purposes of preparing a film, photograph, negative, slide, drawing, painting, or other pictorial depiction, involving obscene sexual conduct. . . .

"(3) Any person who depicts a child in, or who knowingly develops, duplicates, prints, or exchanges, any film, photograph, video tape, negative, or slide in which a child is engaged in an act of obscene sexual conduct, except for those activities by law enforcement and prosecution agencies and other persons described in subdivisions (c) and (e) of Section 311.3."

The Department argues that because Rene does not dispute that he possessed child pornography, distributed child pornography at his workplace, maintained graphic child pornography involving very young children and acts of incest on his home computer and concedes that his actions "likely support criminal conduct within the meaning of the Penal Code," the record supports the finding Rene's own children were "at risk of sexual abuse" within the meaning of subdivision (d) of section 300.

Although Penal Code section 11165.1 and Penal Code section 311.2, subdivision (c), prohibit the distribution of child pornography, subdivision (d) of section 300 requires that the minors must be the object of sexual abuse or exploitation. Section 300, subdivision (d), expressly provides that a child comes within the jurisdiction of the dependency court if "[t]he *child* has been sexually abused, or there is a substantial risk that *the child* will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent . . . ." (Italics added.)

Consequently, the Department's argument that Rene's possession of and efforts to share child pornography with other adults, without more, brings his own children within the jurisdiction of the dependency court under subdivision (d) of section 300 is unavailing. There was no evidence in the record that Rene ever sexually abused any of the children, they had reportedly never seen the child pornography files and they did not have unsupervised access to Rene's computer where the files were stored. The

11

Department presented no evidence of a link between the possession or distribution of child pornography and the sexual abuse of one's own children.  While the Department is justifiably concerned about Rene's conduct with respect to the possession and sharing of pornography, such conduct, by itself, does not support jurisdiction under subdivision (d) of section 300.

Because we conclude there was insufficient evidence to support jurisdiction under section 300, subdivision (d), we reverse the jurisdictional order.

### *DISPOSITION*

The order is reversed.

<strong>WOODS, J.</strong>

**We concur:**

      **PERLUSS, P. J.**

      **ZELON, J.**